USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 02/01/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDRA ARACE, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

QUICKEN LOANS, INC. and DOES 1–20,

Defendants.

No. 15-CV-382 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff brings this putative class action pursuant to the Real Estate Settlement Procedures Act alleging that Defendants Quicken Loans, Inc. and up to 20 unknown associates engaged in an improper mortgage lending practice by charging and splitting an unnecessary "tax service fee" in connection with Plaintiff's mortgage loan. Specifically, Plaintiff alleges that because her residential building is run as a cooperative and owned by a cooperative corporation that pays the real estate taxes on all the units, Quicken Loans had no need to charge Plaintiff a tax service fee on behalf of itself or any other entity. Plaintiff brings her claim pursuant to 12 U.S.C. § 2607(b), which prohibits the splitting of unearned fees related to mortgage loans. The Supreme Court recently made clear, however, that § 2607(b) proscribes only the splitting of fees "between two or more persons" and does not provide a remedy when fees are unearned but not split. *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2044 (2012).

Quicken Loans moved to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff fails to state a claim in light of *Freeman* because she does not allege her tax service fee was split. The Court agrees. Quicken Loans' motion to dismiss is therefore granted.

## BACKGROUND

### I. Facts

On January 14, 2015, Plaintiff obtained a thirty-year fixed-rate mortgage loan from Quicken Loans to finance her purchase of the shares allocated to an apartment in a residential cooperative building in Manhattan. Am. Compl. ¶¶ 5, 15. Residential buildings owned as cooperatives, or "co-ops," are unusual in that residents do not own the physical units in which they live but rather shares "of the residential housing corporation . . . that owns the subject building." *Id.* ¶ 12. The corporation is thus "the owner of the real property subject to real estate taxes, and the unit space is not identified by an individual tax lot designation." *Id.* (emphasis omitted). Typically, cooperative corporations "charge maintenance fees to unit owners, remittance of which is used to pay the operating expenses of the [c]ooperative [c]orporation, which include[] remittance of the real estate taxes applicable to the entire [building]." *Id.* ¶ 13.

Plaintiff alleges that, at some point before she obtained her mortgage loan, Quicken Loans' counsel notified her that she would be charged "a Tax Service Fee in the sum of Seventy-Eight ($78.00) Dollars." *Id.* ¶ 15. According to Plaintiff, that fee "was split by [Quicken Loans] with payment subsequent to Plaintiff's purchase of the sum of Sixty ($60.00) Dollars to First American Real Estate Tax Service and Eighteen ($18.00) Dollars to Title Source, Inc." *Id.* Plaintiff's HUD-1 Settlement Statement referenced in her First Amended Complaint indicates, however, that Plaintiff was charged a "Tax Service Fee" in the amount of $60.00 paid to First American Real Estate Tax Service ("First American") and a separate "Tax Certification" fee in the amount of $18.00 paid to Title Source, Inc. Rose-Smith Decl. Ex. A ("HUD-1") at 2; *see* Am. Compl. ¶ 15.

Plaintiff further alleges that neither Quicken Loans nor the entities with which she claims Quicken Loans split the tax service fee performed any service in exchange for the charge. Am.

Compl. ¶ 16. Plaintiff concedes that mortgage lenders may charge "a one time 'tax service fee' for the cost to contact the taxing authority, create [a] tax escrow [account], and [e]nsure timely payment of applicable taxes pertaining to real property." *Id.* ¶ 11 (emphasis omitted). Plaintiff contends, however, that none of these reasons apply to a cooperative corporation. She alleges that "Quicken Loans independently . . . verified the absence of any tax lien either against the [u]nit purchased by Plaintiff or the [c]ooperative [as a whole] by requiring a lien search" separate from the tax service fee, for which Plaintiff alleges she was charged $350.00. *Id.* ¶ 16. Plaintiff also alleges that because the cooperative corporation is responsible for paying the real estate taxes on all the apartments in the building, Quicken Loans had no reason to create a tax escrow account or ensure that the building's real estate taxes were paid in a timely manner. *Id.* ¶¶ 12–13. Plaintiff thus claims that she was charged an unearned tax service fee that was split in violation of § 2607(b).

## II.   Procedural History

Plaintiff initiated this action on January 20, 2015, less than a week after obtaining the mortgage loan at issue. Dkt. 1. On April 27, 2015, Quicken Loans moved to dismiss pursuant to Rule 12(b)(6), relying on *Freeman*. Dkt. 13. On May 7, 2015, Plaintiff filed her First Amended Complaint, which clarified her allegations as to how she believed the tax service fee was split and why it was unearned. Dkt. 20. On May 21, 2015, Quicken Loans again moved to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff's allegations were still insufficient in light of *Freeman*. Dkt. 21. On June 18, 2015, the Court stayed all discovery pending resolution of Quicken Loans' motion. Dkt. 26.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In applying this standard, courts must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–111 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal alterations omitted).

## DISCUSSION

Plaintiff raises a single claim, namely that Defendants violated 12 U.S.C. § 2607(b), which provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." In *Freeman*, however, the Supreme Court held that § 2607(b) "unambiguously covers only a settlement-service provider's splitting of a fee with one or more other persons; it cannot be understood to reach a single provider's retention of an unearned fee." 132 S. Ct. at 2040. In light of *Freeman*, a plaintiff seeking to state a claim under § 2607(b) "must demonstrate that a charge for settlement services was divided between two or more persons." *Id.* at 2044.

Plaintiff alleges that Quicken Loans charged her $78 for a tax service fee that was subsequently split between First American, which received $60, and Title Source, which received $18. Am. Compl. ¶ 15. This allegation is belied, however, by Plaintiff's HUD-1, which indicates that Plaintiff was charged a $60 "Tax Service Fee" to be paid to First American and an $18 "Tax Certification" fee to be paid to Title Source. HUD-1 at 2. Relying on the HUD-1, Quicken Loans argues that Plaintiff fails to plausibly allege she was charged a split tax service fee. *See* Def.'s Mem. 8–9.

As a preliminary matter, the Court may consider the HUD-1 in deciding Quicken Loans' motion. "When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Graham v. Select Portfolio Servicing, Inc.*, ___ F. Supp. 3d ___, 2016 WL 215237, at *2 (S.D.N.Y. Jan. 18, 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). In *Chambers*, the Second Circuit made plain "that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." 282 F.3d at 153. Here, the First Amended Complaint explicitly references the HUD-1 and alleges that Plaintiff received notice of the split fee "pursuant to the HUD-1 Settlement Statement." Am. Compl. ¶ 15. Plaintiff also signed two of the HUD-1's four pages. *See* HUD-1 at 2, 4. Plaintiff thus both possessed the HUD-1 before filing this action and explicitly relied on its contents in drafting the First Amended Complaint. In these circumstances, the Court may rely on the HUD-1.

Plaintiff's HUD-1 directly contradicts her allegation that she was charged a $78 tax service fee that was split by First American and Title Source. The HUD-1 indicates at line 806 that Plaintiff was charged $60 as a tax service fee—not $78—all of which was distributed to First American. *See* HUD-1 at 2. The remaining $18 that Plaintiff alleges was also part of the tax service fee and was distributed to Title Source appears at line 810 as a "Tax Certification" charge. *See id.* These are two separate fees distributed to two separate entities, not one fee split between two entities: the Department of Housing and Urban Development's instructions for completing HUD-1 settlement statements explain that line 806 "is used to record the fee for any tax service" and line 810 is "used to record other third party services required by the loan originator." 24 C.F.R. Pt. 3500, App'x A at 430.

Plaintiff makes no attempt to square her First Amended Complaint with her HUD-1, nor does she allege any facts that might suggest that the tax service fee and tax certification charge were in fact one and the same.[1] The Court therefore concludes, contrary to the First Amended Complaint, that Plaintiff was charged two separate fees: a $60 tax service fee and an $18 tax certification fee. *See Zappulla v. Fischer*, No. 11-CV-6733 (JMF), 2013 WL 1387033, at *1 (S.D.N.Y. Apr. 5, 2013) ("When a court considers documents outside the four corners of the complaint, it is not required to accept as true facts alleged in the complaint that are contradicted

---

[1] The Department of Housing and Urban Development's settlement costs booklet indeed defines "tax service fee" differently than "tax certificate." A tax service fee "covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills," while a tax certificate is "official proof of payment of taxes due provided at the time of transfer of property title by the state or local government." U.S. Dep't of Housing & Urban Dev., Shopping for Your Home Loan: HUD's Settlement Cost Booklet, at 42 (2010), *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/rmra/res/settlement-cost-booklet03252010 (last visited Feb. 1, 2016). The Court may take judicial notice of the settlement costs booklet, as it is a "document[] retrieved from [an] official government website[]." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, ___ F. Supp. 3d ___, 2015 WL 5122590, at *7 (S.D.N.Y. Aug. 31, 2015); *see also Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 399 n.1 (S.D.N.Y. 2013) (taking judicial notice on motion to dismiss of "documents issued by government agencies").

by the documents." (citing *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012))).

Because Plaintiff concedes—and her HUD-1 confirms—that all of her $60 tax service fee was paid to First American, Plaintiff has not alleged "that a charge for settlement services was divided between two or more persons." *Freeman*, 132 S. Ct. at 2044; *compare* Am. Compl. ¶ 15 *with* HUD-1 at 2. This failure is fatal to Plaintiff's claim under § 2607(b).

For this reason, the Court dismisses Plaintiff's § 2607(b) claim and need not even determine whether Plaintiff plausibly alleges that the tax service fee was unearned. As the Supreme Court recognized in *Freeman*, "Congress may well have concluded [in enacting § 2607(b)] that existing remedies, such as state-law fraud actions, were sufficient to deal with the problem of entirely fictitious fees, whereas legislative action was required to deal with the problems posed by kickbacks and fee splitting." 132 S. Ct. at 2044. Because she fails to allege fee splitting, Plaintiff's § 2607(b) claim fails even if the fee was unearned.

## CONCLUSION

Quicken Loans' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate item number 21 on the docket and close this action.

SO ORDERED.

Dated:   February 1, 2016
         New York, New York

Ronnie Abrams
United States District Judge

7